Eastern District of Kentucky
FILED
JUL 19 2022
AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**COVINGTON**

**CRIMINAL ACTION NO. 22-CR-43-DLB**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **PLEA AGREEMENT**

**PERRIN GEORGE MARCH, V** **DEFENDANT**

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to count in the Indictment charging a violation of 18 U.S.C. § 922(g)(8). The Defendant agrees to the Forfeiture Allegation in the Indictment.

2. The essential elements of 18 U.S.C. § 922(g)(8) are:

(a) The Defendant knowingly possessed a firearm.

(b) At the time of the charged act, the Defendant was subject to an order, issued by a court after a hearing of which the Defendant received actual notice and at which the Defendant had an opportunity to be heard, which restrained the Defendant from harassing, stalking, or threatening an intimate partner of the Defendant, that by its terms explicitly prohibited the use, attempted use, or threatened use of physical force against such an intimate partner that would reasonably be expected to cause bodily injury or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner and included a finding that the Defendant represents a credible threat to the physical safety of such intimate partner that would reasonably be expected to cause bodily injury.

(c) At the time of the charged act, the Defendant knew that he was subject to such an order; and

(d) the firearm had been transported in interstate or foreign commerce.

3. As to the count of the Indictment, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

On May 15, 2021, Defendant PERRIN GEORGE MARCH, V ("MARCH") was arrested in Kentucky, and charged with misdemeanor 2nd degree stalking, misdemeanor 3rd degree terroristic threatening, and misdemeanor harassing communications. According to a complaint made by MARCH's former intimate partner, who, at the time, was pregnant with MARCH's child, MARCH had stalked and threatened to kill her.

On May 20, 2021, a domestic violence order ("DVO") was issued by the Commonwealth of Kentucky, Campbell County Family Court (21-D-074-001) against MARCH regarding his conduct towards an intimate partner. The court found, after a hearing for which MARCH received actual notice and had an opportunity to be heard, that an act of domestic violence and abuse had occurred and may occur again, and it prohibited MARCH from committing further acts of abuse or threats of abuse, stalking or sexual assault; unauthorized contact with protected persons; being within 500 feet of three specific addresses; and disposing or damaging property of the parties to the DVO. MARCH was also to obtain a psychological, alcohol and drug evaluation and treatment if necessary. The DVO included warnings about 18 U.S.C. § 922(g)(8) which carries penalties for possessing, transporting, shipping, or receiving any firearm or ammunition while subject to a DVO. The DVO was ordered to remain in effect until May 19, 2024.

The DVO was amended on September 9, 2021, to make arrangements for the custody exchange of March's child, but the original conditions of the May 20, 2021, order remained in place. The amended DVO also included warnings about 18 U.S.C. § 922(g)(8) which carries penalties for possessing, transporting, shipping, or receiving any firearm or ammunition while subject to a DVO.

On May 13, 2022, the Federal Bureau of Investigation executed a federal search warrant on MARCH's residence at Foote Avenue, Bellevue, Kentucky, which is located in the Eastern District of Kentucky. MARCH was at the residence at the time of the search. During the search of the residence, investigators found a fully loaded AK-47 pistol, serial # B 01637, manufactured by Riley Defense Inc., in Charlotte, North Carolina under the dresser in what appeared to be MARCH's bedroom. ATF reviewed the firearm and determined that it had traveled in interstate commerce prior to MARCH having possession of it. The firearm was semi-automatic capable of accepting large capacity magazines.

In the bottom drawer of the same dresser under which the firearm was located, agents found four loaded magazines and a loaded 60-round drum magazine. One additional loaded magazine was found in the closet of the master bedroom. All of the magazines found were large capacity magazines. A bullet in one of the magazines was painted with the words "WHITE POWER." There were Nazi symbols painted on some of the magazines as well as the number "47." The agents also found a "Sig" weapon sight.

Additionally, Tannerite and 21 boxes of additional ammunition were located throughout the residence. A copy of the DVO was also found in the residence.

4. The statutory punishment for the count in the Indictment is imprisonment for not more than 10 years, a fine of not more than $250,000.00, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of sentencing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2021, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 2K2.1(a)(4)(B), the base offense level is 20.

(c) The Defendant's relevant conduct includes the information set forth in paragraph 3. The United States' position is that the relevant conduct also includes information provided to Defendant in discovery.

(d) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant=s timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the Indictment and will execute any documents necessary for this forfeiture. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense as set out in the forfeiture allegation of the Indictment.

9. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of

payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

10. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

11. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

14. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant=s entry into this Agreement is voluntary.

CARLTON S. SHIER IV
UNITED STATES ATTORNEY

Date: 7/19/22 By: ______________________
Emily K. Greenfield
Assistant United States Attorney

Date: 7.18.22 ______________________
Perrin George March, V
Defendant

Date: 7-18-22 ______________________
Lee Metzger
Attorney for Defendant